Case 18-2309, U.S.A. v. Amarion McElrath, oral argument, not to exceed 15 minutes per side. Ms. McManus for the appellant when ready. May it please the court, Jennifer McManus on behalf of the United States, I have reserved five minutes for rebuttal. The officers in this case reasonably suspected that the defendant and his companion might be associated with the ongoing drug activity occurring at 637 Florence. That reasonable suspicion justified the initial stop in detention. Further, the precautionary measures that the detention. For these reasons, we ask this court to reverse the decision of the district court suppressing the drug evidence taken from the defendant's person and the statements that he made. First, there was reasonable suspicion to stop and detain the defendant. There were at least five factors that contributed to the officer's reasonable suspicion in this case. First, of course, the officers had probable cause to believe that there was ongoing drug trafficking activity occurring at the target house 637 Florence. It is often less clear than in this case that there is criminal activity afoot in the context of a Terry reasonable suspicion based stop. Here, the officers had probable cause to believe that there was drug As the officers approached 637 Florence to conduct the search, they knew... They had a search warrant for 637 and its environs, right? Correct, for the premises at 637 to include inside and outside the house, the grounds, etc. As they approached the house to execute the search warrant, they knew that the defendant, Mr. McAlrath, might be present, in fact, would likely be present at the house because they had just seen him conduct a drug sale on the sidewalk in front of 637 Florence an hour before. It wasn't just that they had probable cause to believe that this was a drug house. They actually had specific information that the defendant had sold drugs right in front of the house, stepping off of the porch onto the sidewalk one hour before. They knew that the defendant had outstanding warrants and they knew that he might be armed and dangerous, as perhaps others might be at the house. Third, as the officers approached, they saw the defendant and his companion near a car that was backed into the driveway between 635 and 637 Florence. They didn't know, or some of them didn't know, that that was the defendant. Isn't that correct? That is absolutely correct, that neither of the officers, there were two principal officers, two of the five who testified at the suppression hearing who approached from the front, and But significantly, in our view, they knew that it might be the defendant. They knew that he had recently sold drugs right there in front of the house and they knew that this person might be the defendant. So as they approach and get out of their vehicle, their police vehicle, this car that and driving down the sidewalk to make its escape. This added to the officer's reasonable suspicion that the defendant and his companion might be involved in the drug activity that was occurring there. Even the fact that they were potentially interacting with this car that was parked at a known drug house itself lent some additional degree of suspicion. But then, nearly simultaneously with the police officer's exit from their vehicle, this car then suddenly fled the scene. That added to their reasonable suspicion that the defendant was possibly engaged in criminal activity. Fourth, there is the defendant's efforts to leave the scene without interacting with the officers. Is it your position that the district court's factual finding on that issue was clearly erroneous? The district court found that he was not running or jogging, but your briefing pretty consistently says that he was running or jogging away. Do you challenge the decision of the district court as a factual finding? No, we don't. Well, we actually, we do think our position is that the record supports that the defendant in particular was walking, as I think we put it in our brief, with some dispatch. That he was not, he was trying to get away from the scene. But we do not argue, and we didn't intend to argue, that he was in a full-on sprint, that he was running. But the testimony from the officers was pretty consistent that they perceived him, at least reasonably and Now, Officer Boutel, who is the one who initially, along with Officer Schemenauer, ordered them to stop, characterized him as walking. And we don't think that, although we quibble in certain respects with the way that the district court expressed certain of its factual findings, we do not think that this court needs to find that the district court committed clear error in any of its factual findings in order to reverse this decision. Whether there was reasonable suspicion is, of course, a legal conclusion. And even based on the facts that the district court found them, we believe that the officers had reasonable suspicion to stop and detain the defendant. And finally, the fifth factor is just the overall setting. It's nighttime, it's cold, it's snowing, it's 930 at night. It's not impossible that there are innocent passersby around, but it lessens the likelihood that somebody is being innocently, somebody is out for an evening stroll. So the overall setting, the fact that a search warrant is being conducted, that there's this car that's backed into the driveway that suddenly flees. Is it important to determine or to have the district court determine whether all of this is physically on the property of 637? There seems to be a lot of back and forth about is it really on 635? Is it close to the property line? Who's standing where? In our view, that is not what is most important. Whether they were technically on the property of 635 or technically on the property of 637. What is important is whether the officers who arrived objectively, reasonably perceived them to be associated with the target house. And we submit that the record absolutely does support that view, that number one, they did perceive these two individuals to be on the property or the premises to be searched, and that two, that was objectively reasonable. Separately from the warrant to search the house and the yard, right? Isn't that, you're not relying on the ability to stop that they were in the yard? Correct, yes. So you have to make the showing that it was reasonable to stop someone walking away. There is law that someone can hurry away, and that that alone is not sufficient. Was there anything in the evidence about the defendant particularly that made him suspicious? Other than, we understand where he is, we understand that there was earlier drug activity, shots fired, the whole bit, but what about him individually choosing to walk away made him suspicious? Number one, there's the fact that he did not immediately comply with the order of the officers to stop, his companion did. He only stopped when he rounded the corner, and the testimony from the officers who approached across the field was that it was at least their perception that the reason he actually did stop was that he saw four to five additional officers coming across that field. So there is that evasive behavior. There is also the possibility that he was interacting with this car that suddenly and dramatically fled. Now we don't know for sure whether he was interacting with that car directly or not, but he was positioned close to that car, and we submit that that is enough for the officers given the overall setting of the fact that they had just witnessed a drug deal in almost the exact spot on which the defendant was standing an hour earlier. All of that gave the officers reasonable suspicion to investigate further in order to confirm or dispel their suspicion that they were associated with the car and or the house. And with that, I will wait until Roboto. Thank you. Good morning, Your Honors. May it please the Court. My name is Britt Cobb from Grand Rapids, Michigan, for the appellee, Mr. McElrath. I'm asking you to affirm the district court's decision suppressing this evidence that there were four components to the district court's order. The first was that Boutel's seizure of Mr. McElrath was not covered by the search warrant under the Bailey and Summers rule because he was not in the immediate vicinity of 637 Florence as that immediate vicinity rule is defined in Bailey's and Summers. The government is not appealing that aspect of the district court's decision. The second aspect of Judge Quist's decision is that he found that Boutel and Keg seized McElrath. It was not consensual, and it required reasonable suspicion, which Judge Quist found the police did not have, and that it exceeded the bounds of a Terry stop in any event because there was no reasonable belief that he was armed and dangerous. The third and fourth components of the district court opinion deal with stuff that happened after the fact, whether consent to search was consensual, Judge Quist found that it wasn't, and then whether inevitable discovery saved all this anyway, and Judge Quist found that it didn't, but those aren't appealed either. So the only issue we have on appeal here is whether there was reasonable suspicion to stop McElrath. And that the government has chosen only to address this issue is puzzling to me because when you read the transcripts of the evidentiary hearing, and you look at- The transcript of what? The evidentiary hearing. I'm sorry, Your Honor. And if you have taken the time to look at the videos of the interaction between the police and Mr. McElrath, it could not be more clear that the only reason he was detained was because the police thought he was covered by the search warrant. The officers felt that the search warrant authorized them not only to detain individuals on the property, but anybody who was coming from it, or who we had reason to believe was associated with the property. And that's from Investigator Cakes' testimony at page ID 221. Boutelle discusses this at page ID 130, 138, 139. Schemenauer says it was their policy to detain those who attempt to flee from a search warrant execution. Your opposing counsel now argues that it was not because there was an existing search warrant, but because of the totality of the circumstances at the time gave them reasonable suspicion to be able to stop. Yes, and I hear her saying that, Your Honor, but my point is that that is not why the police stopped these guys. The police stopped them because they thought they could, due to the search warrant. And they can't. Clearly they can't. The Bailey and Summers rule doesn't- There will also be reasonable suspicion that people that are two feet over the property line of a known drug house, where there had been sales in the very immediate past, who are associated apparently with somebody who just crashed into the police car, that that's reasonable suspicion of criminal activity. I think that it can be. The problem here is that was not part of the calculus for any of these officers. But, all right, is the subjectiveness important? That is, if you have in fact have reasonable suspicion, but you're also acting on another theory, does that obviate the reasonable suspicion? In my view, what we have here with the reasonable suspicion is a reconstruction of what could have formed the basis for reasonable suspicion by the officers at the time of the stop. It wasn't what the police officers relied on. I'm asking the question, in the context of a Terry stop, does it have to be subjectively the reason? To take sort of an example is, suppose you have a situation that is dripping with reasonable suspicion, and the police have a warrant for John Jones, and they mistakenly see somebody and believe he's John Jones. So that's the reason they stop him, but without the warrant, there's oodles of reasonable suspicion. Do they lose because of the subjective reason they stopped him? I mean, isn't that kind of like Foran, the case that says that if you really have cause to stop somebody, you get to stop them? You know that's the police car case. Right. I think what you're talking about with Wren is really a pretext. In other words, the motivation behind stopping somebody is different than the official, objective, legal justification. I understand that difference, but then isn't that even better for the cops that in Foran, even if it is a pretext, the cops win because he really did commit the offense? Here, if you really do have reasonable suspicion, why does it matter that you think you're stopping him for a separate reason? Well, two things on that, Your Honor. First of all, reasonable suspicion wasn't a pretext and it wasn't a motivation. The motivation and the justification here by the police explicitly were the existence of this search warrant. So that's the first thing. But the second thing is the cases on reasonable suspicion. I mean, if they say it once, they say it a million times that to support an investigatory stop, officers must reasonably suspect a person is committing or has committed a crime. And to frisk them, officers must reasonably believe they're armed and dangerous. So it's from the perspective of the officer, what they know at the time and what they're acting on, and not what is reconstructed on a post hoc basis by the government. So that I think that I don't know that even this reasonable suspicion argument, even and I would like to obviously kind of go through why I don't think there was a reasonable suspicion anyway. But I don't know that it saves this evidence from being suppressed because that's not what the police relied on here. And the government hasn't cited any cases, and I'm not aware of any, where this sort of post hoc reconstruction of what happened could have provided reasonable suspicion. It's just not that the officers acted on it. So kind of moving, unless anybody has any other questions about that, just sort of moving on to if you accept that this was an investigatory stop, the scope of this seizure was far too broad for what we normally see in investigatory stops. Now, as the government acknowledges in their reply brief, investigatory stops normally do not involve weapons being drawn, ordering suspects to the ground, or using handcuffs. I might also add they don't normally involve 19 police officers and a tank and a couple of marked cars and unmarked cars and canines. These investigatory stop and frisks for weapons are allowed only when there are particular facts from which it can be reasonably inferred that the suspect is armed and dangerous. And in all of his argument in the government's briefs, there is not a single fact particular to McElrath supporting any inference that he was armed and dangerous. We hear a lot of this, well, it might be, and it could be, and possibly be, and he was nearby, and it was close enough. I mean, that all sort of smacks of the ambiguity that we cannot rely on for reasonable suspicion. I think your opposing counsel argues that the issue was, in fact, what occurred on the site. I understand your argument. I have some questions about how important the subjective motivations of the officers can play. If it were the search warrant, then the dividing line between the two lots might make a difference. If it is a reasonable suspicion argument, and the dividing line in which this car was parked is right on the border of the two, when you look at the pictures, the visual pictures from the top, you're not even sure if it's not a shared driveway. So if they have that, and then they have the whole panoply is what the argument is. Sure. Tell me why we could not consider everything, the one hour ago drug stop, the call-ins for weapons at the home, shots fired at night, the proximity of the individual to the car that then pulls out and actually hits a police officer and runs on down the sidewalk, the knowledge that it was a drug house and that there was sufficient cause to believe that they got a warrant. Is your position that they're hung with saying it was either within the warrant or not?  Not at all, Your Honor, not at all. So distinguish these other facts. Sure, I would love to. This was a neighborhood. It was 9.30 at night. It was not 2 o'clock in the morning. This was a high-density place where people live. Of course it was dark and snowing and colder than a banker's heart out that night, right? And it usually is in Michigan in February. And if the world stopped because it was cold and it was dark, nobody would get anything done. Not everybody works 9 to 5. People have to go to the grocery store. People have to walk to see family and friends. Mr. McElrath was dressed appropriately for the weather. He was in a heavy coat. He had a hood up. He didn't look like he was just running out onto the street to conduct a drug transaction. Police don't have to abandon all of their knowledge of how people both law-abiding and not law-abiding might dress in cold, snowy weather to be out at night, though, do they? No, I don't think so. And I think there are some cases about masks and hats and that type of thing. But the point is he wasn't doing anything suspicious. Your opposing counsel suggests that the most suspicious thing was that they pull in to execute a warrant and the car near which they are standing, either on the property or on the line of the property, pulls out, hits the police officer's car, and then drives down the sidewalk. Two things about that, Your Honor. The first is that no one was sure whether these two men, one of which turned out to be McElrath, was talking to anybody in the Magnum or if they were just walking by. Nobody was sure about that. Reasonable suspicion doesn't require anybody to be sure. No, but talking to someone without more doesn't indicate a crime is happening or is about to happen. And the court has said that in the Beauchamp opinion. But I think the second point is that reasonable suspicion cannot be based on events that occur after the defendant is seized. And in this case, they were yelling at him and the person that was with him to get on the ground, face down, on your stomach, we're the police, before any of this ever happened. Before the car ever moved? Yes. And I would point the court to the prosecution's brief, page 8, the reply brief, where they acknowledge the car's flight was not a but-for cause of the demands to get down. This all happened, it happened after. And you can see it on the video. The video, it looks like it's all going on. Well, true. But if you do slow it down, you can see that it is, they jump out of the car, you know, they're yelling, please get on the ground, and then this car starts to take off. Isn't it clear that he doesn't actually comply until after the car, you know, scratches out, hits the other car? Well, and I would agree with Judge Drench, yeah, this all is sort of happening at the same time. But it's like, yes, get on the ground. They say one of the guys immediately goes to the ground. McElrath takes an extra, you can see it on the video, like two steps. I guess my question is, to what extent in a melee, which I don't think anybody is going to argue that this wasn't something of a melee, you've certainly described it that way, to what extent do we require in determining whether there's reasonable suspicion that the police have to just segment things so that we look at these two seconds and these two seconds and these two seconds, or do we look at the whole picture in order to figure out whether a reasonable officer under those circumstances would have thought that this guy was very likely up to no good? Well, but the melee was created by the police. I mean, before they arrived, all we have is two guys walking down the street that aren't doing anything suspicious. They don't know it's McElrath. Or perhaps standing by a car parked very close to a known drug house. Maybe, but in the parking lot, but in the driveway of the neighbor's house. So there are all these facts that sort of looking back on it, yeah, it was McElrath, so we can sort of move backwards and say, well, obviously it was suspicious that he was by this house, but nobody knew that at the time. They didn't know anything about McElrath other than he was a black male born in 1993. They didn't make any attempt to say, well, he was wearing this an hour earlier, or he's this build or that build or anything like that. And, in fact, you'll probably notice if you watch the whole video, I mean, they stopped a lot of people. There was a woman sitting out in front of a car, or sitting in a car in front of the house that they pulled out at gunpoint. There wasn't reasonable suspicion for any of these people. It's just what they were doing when they went to go execute this warrant, because they thought that they could and they can't. Sorry, the woman was on the premise. I mean, she's not a defendant here. No, she was parked in a car on the street in front of the house, but she wasn't getting in or out or anything like that. In fact, I think they said that they thought she had just pulled up. So I'm at zero. Take a moment to summarize. Well, Your Honor, I ask you to affirm. In cases like this, obviously the legal conclusions are reviewed by you de novo. But the authority of the court is that due weight should be given to the inferences from the facts from the district judge, just based on the typical things of viewing witness credibility, but also sort of on local custom, and that you should view the inferences in the light most likely to support the district court opinion, which I'm not usually able to say, but I am here, and I thank you for your time. The Supreme Court and this court have repeatedly recognized that the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense. Your opposing counsel raises a concern that where police officers have to act based on what a defendant has done to create a situation may be one thing, but what we have here is a militarized police force showing up in a neighborhood and catching in its large number of people and vehicles and weapons a number of citizens that were there. So the question becomes, do we have the same tolerance for the problems and the needs of the police officers in an emergency situation when it is in fact created by the force that they bring to that neighborhood? I think the answer is yes. I know the district court also made comments about the 19 police officers who were involved and how strong a show of force there was in connection with the execution of the search warrant, but there is nothing wrong with that. The reason why so many officers were involved was because there had been multiple reports of shots fired at that residence. There had been confidential informants who had seen weapons there. As recently as two nights before there was a shots fired report, officers had been dispatched to this house. These officers were charged, they were pleaded with by neighbors in this community to come in and address this problem drug house in their neighborhood. During the pre-raid briefing, officers were told all about this and they were also told, they also discussed what they might encounter at the scene, specifically that there might be children present and that the person who had just sold drugs might well be there. They were told to be prepared for a potentially armed and dangerous situation. So yes, there was a SWAT vehicle involved and there was a heavy police presence, but that is to ensure the safety of everybody in the neighborhood, not to create added danger, but to prevent it. So they had multiple... Is there any indication of how many people they expected to be in the house? Not specifically, but they had been told by neighbors that the woman who lived there was letting drug dealers use her house to facilitate their sales. So I think they expected, and as it turned out, there was four adult males in the house along with a woman and her children. They expected that there might be multiple people in the house or on the premises. So your position is that it's based on the reasonable suspicion growing from the totality of the circumstances and you don't rely on the warrant, or you do? Well, that's correct. We are proceeding on a reasonable suspicion argument. The fact that there was a search warrant is not irrelevant, however, to the reasonable suspicion calculus. The fact that they were there knowing that they had probable cause to believe that there was drug trafficking occurring there is a legitimate factor to consider in the reasonable suspicion calculus. Your opposing counsel says that the sole reason that these two officers who apprehended Mr. McElrath, that the sole reason was the warrant. Do you dispute that? Yes, as to the sole part. We do readily concede that the officers intended to detain people who they perceived to be on the property and executing the search warrant, and that is in the record, and clearly that was their thinking. But officers can have multiple motivations, and what this Court has said in the Supreme Court, I believe, is that the Court does not consider the subjective motivations of police officers in conducting Fourth Amendment analysis. The question is whether, based on the facts and circumstances, was it objectively reasonable for the officers to take the actions that they took. You used the phrase there, conducting Fourth Amendment analysis. Are you taking that solely from warrant-type cases or are there cases that also use it in the Terry context? I think that there are cases in the Terry context that talk about how the question is whether it was objectively reasonable, and that's why you don't look at what the officers were actually thinking but what a reasonable officer at the scene would believe. And if the facts and circumstances indicate that a reasonable police officer would think that there was reasonable suspicion, then that is enough to sustain the Terry stop. In this case, I guess if the person who appeared to be a homeowner next door was raking his lawn 20 feet off the property line, they probably wouldn't have relied on the search warrant to stop him. The facts and circumstances would be different then, and the outcome of the reasonable suspicion analysis may well be different in that circumstance. Take a moment to conclude, please. Based on the totality of the circumstances, the officers in this case acted reasonably in stopping and detaining the defendant and his companion, and they took reasonable precautionary measures to secure and stabilize the scene. They acted within the scope of the Fourth Amendment, and the district court's decision should be reversed. Thank you. Thank you. Thank you both. We see, Ms. Cobb, that you are from the CJA panel. We thank you for your willingness to serve on that panel. Thank you both. We have no further argument cases. You may escort, please. This honorable court is now adjourned.